In re William L. KNABE, Debtor.

Maxine T. BENNETT, Plaintiff,

v.

William L. KNABE, Defendant.

Bankruptcy No. IP80–1201.
Adv. Proceeding No. 80–459.

United States Bankruptcy Court,
S. D. Indiana,
Indianapolis Division.

Dec. 4, 1980.
As Amended Jan. 9, 1981.

D. Michael Bowman, Indianapolis, Ind., for plaintiff.

Ralph Ogden, Wilcox, Ogden, & DuMond, Fred D. Scott, Scott & Gurwitz, Indianapolis, Ind., for defendant.

CONCLUSIONS OF LAW AND ENTRY ON PARTIES' CROSS–MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE

ROBERT L. BAYT, Bankruptcy Judge.

On the 25th day of March, 1980, the debtor, William L. Knabe, filed his Petition for

Relief in the United States Bankruptcy Court for the Southern District of Indiana. On his petition he listed a debt to Maxine T. Bennett in the amount of $1,400. The debt represented attorney's fees which were awarded to Bennett by the Superior Court of Marion County, Indiana for representing Knabe's wife in a dissolution of marriage proceeding.

Bennett filed her Complaint for Relief from Stay and thereafter an Amended Complaint for Relief from Stay and to Determine Dischargeability of Debt, attaching a copy of the dissolution of marriage decree to the complaint.

Knabe, by counsel, filed his answer in general denial. Bennett then filed her Motion for Summary Judgment and submitted her legal memorandum.

Knabe filed his Cross-Motion for Summary Judgment, legal memorandum, and a Motion to Strike. No affidavits were filed by either party.

The court now makes it conclusions of law:

## CONCLUSIONS OF LAW:

1. All things necessary to be done as a prerequisite to this proceeding have been done and the court has jurisdiction over the parties. Jurisdiction over the subject matter exists by virtue of 28 U.S.C. § 1471(b), (c), and (e) (1976).

2. These motions raise the issue of whether the obligation of one spouse to pay the other's attorney's fees under a final divorce decree is nondischargeable in bankruptcy. Such fees were previously nondischargeable under § 17(a)(7) of the Bankruptcy Act[1] in this circuit under *Schiller v. Cornish (In re Cornish)*, 529 F.2d 1363 (7th Cir. 1976). The court must determine whether that case remains valid law under § 523(a)(5) of the Bankruptcy Reform Act of 1978 (hereinafter "Bankruptcy Code" or "Code").[2]

3. Defendant Knabe, by making his Cross-Motion for Summary Judgment, concedes the truth of plaintiff Bennett's allegations for purposes of his motion. *Prepo Corp. v. Pressure Can Corp.*, 234 F.2d 700 (7th Cir.), *cert. denied*, 352 U.S. 892, 77 S.Ct. 132, 1 L.Ed.2d 87 (1956); 10 Wright and Miller, *Federal Practice and Procedure: Civil* § 2720, at 462 (1973) (hereinafter "Wright and Miller: Civil"). Those assertions are set forth in Bennett's amended complaint. She contends that the debt owing to her from Knabe is nondischargeable as a matter of law as the debt represents attorney fees ordered paid to her for representing his ex-wife, Paula, in their dissolution of marriage. A copy of that decree, under the seal of the Superior Court of Marion County, Indiana, is attached to the complaint as Exhibit A.[3] Paragraph 8 of the Order therein gives Bennett judgment for $1,400 "as and for services provided to the petitioner [i. e., Paula Knabe]." Since Knabe has not asserted any other supplementary facts in his answer, the court concludes that the above allegations are the material facts controlling Knabe's motion. For the same reason, and because of Knabe's concession of the allegations for purposes of the motion, the court further concludes that there is no genuine issue as to these material facts. However, the court is of the view that Knabe is not entitled to judgment as a matter of law.

4. In Paragraph 4 of the motion, Knabe claims that his ex-wife's attorney's fees are dischargeable in that they are assigned to another entity, i. e. Bennett. Section 523(a)(5) reads as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property

---

1. Pub.L.No.91–467, § 6, 84 Stat. 992 (1970).

2. Pub.L.No.95–598, 92 Stat. 2549 (1978), *codified in part at* 11 U.S.C. § 101 *et seq.* (1979).

3. *In re Marriage of Knabe*, No. S679–0395 (Superior Ct. No. 6, filed Dec. 28, 1979).

settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

He argues in his supporting memorandum that it was Congress' intent that only those obligations payable directly to a spouse or dependent were to be nondischargeable as alimony, maintenance, or support. He asserts that any assignment of such payments renders them dischargeable, and quotes language from the Senate Report in support of his contention.[4] This is an overbroad reading of the legislative history of the Code. Notwithstanding the broad definition of "entity" in § 101(14), Congress' concern was not to deter all assignments of such payments, but only those made to state welfare agencies. By doing so, it hoped to prevent the agencies' enrichment at the expense of dependent ex-spouses and children. An examination of the House Hearings,[5] referred to in the House Report,[6] removes any doubt on the subject:

Debts related to child support obligations and marital property settlements also are not [sic] exempted from discharge. § 4–506(a)(6) of H.R. 31 and H.R. 32 perpetuate this exemption, .... Unfortunately, neither bill clearly states that this exception to discharge does not extend to state welfare department liens. This exemption should be a narrow one, benefitting only the expressed beneficiar-

ies, not governmental entities like the welfare department. This issue has become even more critical in light of a provision among the recent amendments to the Social Security Act, 42 U.S.C. 656(b) [sic] which rather ambiguously states that "A debt which is a child support obligation assigned to a State under section 402(a)(26) is not released by a discharge in bankruptcy [sic]." Legislative history indicates that that provision was inserted to protect the rights of the spouse and child, but judicial interpretation could force another meaning upon that section .... [W]e urge the adoption of H.R. 32 § 4–506(a)(6) with redrafting to insure the intended results.

It is significant to note that both the House and Senate Reports explain the effect of § 523(a)(5)(A) by reading it in conjunction with the repeal of former 42 U.S.C. § 656(b) (1976).[7] These cumulative comments make it clear that alimony, support, and maintenance payments are to be automatically dischargeable only where assigned to a state welfare agency. While it can be argued that Congress expresses itself unclearly through § 523(a)(5)(A), the legislative history removes the ambiguity. Since Knabe has claimed an erroneous legal basis for relief, his Cross-Motion for Summary Judgment must be, and hereby is, DENIED.

5. In deciding whether Bennett is entitled to judgment as a matter of law, the court must determine whether these attorney's fees fit § 523(a)(5)'s definition of alimony, support, or maintenance. The court must apply a Federal standard, and is not bound by State law. House Report at 364,

---

4. S.Rep.No.95–989, 95th Cong., 2d Sess. 79 (1978) (hereinafter "Senate Report"), *reprinted in* Collier on Bankruptcy, 3 app. (15th ed. 1979) (hereinafter "Collier") *and* 9 Bkr.-L.Ed. § 83:7, at 101 (1979), U.S.Code Cong. & Admin.News 1978, p. 5787. *See* H.R.Rep.No.95–595, 95th Cong., 1st Sess. 364 (1977) (hereinafter "House Report"), *reprinted in* Collier, 2 app. *and* 9 Bkr.-L.Ed. § 82:17, at 376.

5. *Hearings on H.R. 31 & H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary*, 94th Cong., 1st & 2d Sess., ser. 27, part 2 at 942 (1975–76)

(Statement of Ernest L. Sarason, Jr., Staff Attorney, the National Consumer Law Center, Inc.).

6. *Supra* n. 4, at 55.

7. Social Services Amendments of 1974, Pub.L. No.93–647, § 456(b), 88 Stat. 2356 (1975), *repealed by* Bankruptcy Reform Act of 1978, Pub. L.No.95–598, Title III, § 328, 92 Stat. 2679 (1978); House Report at 364, Senate Report at 79.

Senate Report at 79. However, the court cannot formulate that standard in a historical vacuum. The classification of various payments as alimony or support is rooted in the law of the states, to whom the Tenth Amendment reserved the power to govern domestic relations. That law can be used as a guide in developing a bankruptcy concept of support to the extent it is persuasive.[8] Congress mandated the bankruptcy courts to disregard state law in this area only where a state defines alimony or support so broadly that it includes property settlement. Such intent is indicated by Congress' overruling of *In re Waller*, 494 F.2d 447 (6th Cir. 1974), and its approval of the result in *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1954), both of which deal with property settlement. House and Senate Reports, *supra*.

■ 6. Before alimony was made nondischargeable by statute in 1903,[9] bankruptcy case law had already ruled it to be so. The underlying theory was that since alimony is founded on the common law duty of the husband to support the wife, it was not a provable debt in bankruptcy. *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904); *Audubon v. Shufeldt, supra* 181 U.S. at n. 8, 21 S.Ct. at n. 8; *Turner v. Turner*, 108 F. 785 (D.Ind.1901). *Wetmore* also noted that the 1903 act merely restated existing law.[10] It therefore follows that where an obligation is founded on the duty of support, it also will be nondischargeable under § 523(a)(5). The only modification the statute made of that duty was to make it reciprocal by substituting "wife" with the more neutral noun "spouse."

■ The effect of this rule on the fees in issue is to make them nondischargeable if Knabe had an obligation to support Paula by providing her with these funds. Legal fees incurred by the wife, whether in divorce or other contexts, are viewed under domestic relations law as necessities which the husband must provide under his duty of support. Clark, Law of Domestic Relations in the United States, § 6.3 at 190, § 14.2 at 428 (1968). While the Indiana courts have authority to award suit money and attorney's fees under Ind.Code § 31–1–11.5–16 (1976),[11] that power is not solely statutory. It is an inherent power of those courts; where spouses have been ordered to pay attorney's fees under the latter power, their obligation has been held based on the duty of support.[12] *E. g., O'Connor v. O'Connor*, (1969) 253 Ind. 295, 302, 253 N.E.2d 250, 253–54; *State ex rel. Sims v. Hendricks Circuit Court*, (1956) 235 Ind. 444, 446, 134 N.E.2d 211, 212; *Brown v. Brown*, (1973) 157 Ind.App. 672, 677, 301 N.E.2d 400, 403.

■ The court is of the view that this analysis makes eminent good sense. It is a frequent occurrence in divorce that one

---

8. State law has in fact already been so used. *Audubon v. Shufeldt*, 181 U.S. 575, 21 S.Ct. 735, 45 L.Ed. 1009 (1901), the decision which definitively established alimony as being nondischargeable, contains several references to state law.

9. 32 Stat. 798.

10. 196 U.S. at 77, 25 S.Ct. at 175.

11. *Costs—Attorney's fees.*—The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter [31-1-11.5-1—31-1-11.5-24] and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name.

12. Another related purpose of such grants is to provide the spouse in need with adequate means of prosecuting or defending the. action, and thereby insure her a fair and impartial trial. This purpose was recognized under the predecessor to the current statute and is independently recognized in case law. *Welling v. Welling*, (1971) 257 Ind. 120, 132, 272 N.E.2d 598, 605; *State ex rel. Reger v. Superior Court of Madison County No. 2*, (1969) 242 Ind. 241, 244, 177 N.E.2d 908, 909; *Pry v. Pry*, (1947) 225 Ind. 458, 468, 75 N.E.2d 909, 914; 1873 Ind. Acts ch. 43, § 17, at 111, and 1939 Ind. Acts ch. 160, § 1, at 738, *current version at* Ind.Code § 31–1–11.5–16 (1976), reproduced *supra* n. 11, at 6. *Cf. Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (nonwaiver of filing fees for indigent women seeking divorce held to violate their Fourteenth Amendment procedural due process rights).

spouse cannot afford to hire an attorney out of his or her own resources. Such fees are a necessity for the indigent spouse in that court-supervised dissolution is the only legally recognized means of ending the martial relationship. The Marion County Superior Court has already made a determination as to Paula's need for support in the form of fees and the extent to which such support is required. The court therefore concludes that since the obligation to pay attorney's fees in a final divorce decree in Indiana is essentially based on the duty of support, such fees are nondischargeable under § 523(a)(5) of the Code. Knabe's paying the fees to Bennett directly benefits Paula and her children, in that Paula would otherwise have to pay those fees herself. Such an arrangement is permitted by Ind.Code § 31–1–11.5–16 (1976). *In re Cornish, supra* at Conclusion 2, 529 F.2d at 1363 remains the law of this circuit. *Accord, Jones v. Tyson (In re Jones),* 518 F.2d 678 (9th Cir. 1975); *Richter v. Pelikant (In re Pelikant),* 5 B.R. 404, 6 B.C.D. 758 (Bkrtcy.N.D.Ill. 1980).

The court further concludes that in light of this holding, plaintiff Bennett is entitled to judgment as a matter of law. Her Motion for Summary Judgment ought to be, and hereby is, GRANTED.

7. Bennett has alleged specific facts relative to the ex-spouses' relative earning capacities in the Introduction to her supporting memorandum. She has also cited authorities therein and in her reply brief which speak to the need of one spouse and the ability of the other to pay. *E. g., In re Marriage of Dougherty,* (1978) Ind.App., 371 N.E.2d 1328. Counsel for Knabe correctly filed a Motion to Strike the factual allegations. These factual allegations have to be disregarded in that they are not in proper affidavit form under Fed.R.Civ.P. 56(e) and Fed.R.Bankr.P. 756 (1973). They were not sworn to before an authorized officer, contain inadmissible hearsay, and are made on the information and belief of Bennett's counsel rather than on his personal knowledge. The court therefore cannot consider these allegations on summary judgment and sustains Knabe's Motion to Strike. *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.,* 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950); *American Securit Co. v. Hamilton Glass Co.,* 254 F.2d 889, 893–94 (7th Cir. 1958). *See generally* 10 Wright and Miller: Civil § 2738.

### ENTRY

It is therefore ORDERED, ADJUDGED AND DECREED:

1. That Knabe's Cross-Motion for Summary Judgment is hereby DENIED;

2. That Bennett's Motion for Summary Judgment is GRANTED;

3. That the $1,400 in attorney's fees awarded in *In re Marriage of Paula K. Knabe and William L. Knabe,* Cause No. S679–0395, by the Marion Superior Court is NONDISCHARGEABLE under 11 U.S.C. § 523(a)(5) (1979);

4. That Knabe's Motion to Strike is hereby GRANTED.